Please call the first case. Good morning. Good morning. Assistant State's Attorney Coulifornia on behalf of the people of the state of Illinois. Thank you. Your Honors, Robert Hirshhorn on behalf of Appellant Carlos Orengo. Okay, both sides will have 15 minutes. Appellant, if you want to have a rebuttal, of course you do. Reserve any time from your 15 minutes for the purposes of that rebuttal. Thank you. Appellant, you may proceed. Again, good morning, Your Honors, and may it please the Court. My name is Robert Hirshhorn. I'm with the Office of the State Appellate Defender, and I'm here today representing the Appellant, Mr. Carlos Orengo. Now, in the case of Barr, Your Honors, we're being asked to take a swipe in unraveling something of a Gordian Knot. As the Court knows, my client was found not guilty in a discharge hearing in the Circuit Court. That was preceded by two sequential findings. First, he was found unfit for trial. And second, it was the Court made a determination that it was unlikely that he was going to be restored to fitness within a reasonable time, in that case, a year. In fact, it's not the case that he was restored to fitness. His condition is degenerative. It's a senility caused by his alcoholism. And as Your Honors are also probably aware, there are further proceedings that are currently pending in the Circuit Court that are related to this. All that, however, is mere prologue here. The issue here is whether hearsay testimony, allegedly from a child victim of sexual abuse, which is rendered admissible in criminal proceedings, criminal prosecutions under 115-10 of the Code of Criminal Procedure, are also admissible in not not guilty proceedings, in discharge proceedings. And as we stated in our briefs, when people bewayed, the Illinois Supreme Court told us explicitly, in fact, it told us, I think, three times during the course of that opinion, that those proceedings are civil rather than criminal in nature. That's obviously, it's our position. But when they did that, they also said, quoting, the Sixth Amendment Confrontation Clause does not apply to a discharge hearing, which is not a criminal prosecution. I mean, he had no Sixth Amendment right of confrontation at all. None. Zero. The coppers alone could have testified. They could have read from police reports. And if what I just said is not so, why is it not so? Well, Your Honor, I think when you look at the statute here, when you look at this, we have a, like, the discharge hearing is itself a creature of statute. It didn't exist before the legislature acted. And when the legislature creates a proceeding, when it creates a statutory vehicle to address something, the legislature has, within the scope of that authority, within the compass of that authority, to say, this is what we're going to allow here. And when you look at the discharge statute, when you look at the specific language that the legislature used in the discharge statute, they said that we're going to relax the hearsay rule for secondary matters. And it gave a laundry list of secondary matters where it would relax the hearsay rule. And when they do that, they're limiting it. They're saying, thus far and no further. So it's based not on a confrontation clause, Your Honor, you're based on the statute. I think this is a pure question. I hate the word concede. I wouldn't concede anything, so I don't like to ask lawyers to concede anything. So your basis is strictly on the statute. Your argument is not based, it's based strictly on statutory protection. It's not based on the Sixth Amendment. Well, because it's civil in nature, I think that you do have, and the Supreme Court, in a way, did make that comment. But I think more importantly, as it was presented here in the briefs, as we're arguing it here this morning, what we really have here is a question of statutory construction. Look at the two statutes here. Section 115-10, emanating from the Code of Criminal Procedure. Look at the discharge provision, 104-25, and what do they tell you? That's a question of statutory construction. And we're told, and while the State said in its brief, and I acknowledge in the reply brief, that really nobody has any authority that is precisely on point. There's nothing controlling on this. That doesn't mean that this Court is without guidance. That doesn't mean that you don't have a lot of places we can look for how to solve this riddle, how to slice this courtier knot. And I would suggest to Your Honors that what we need to do here is just to look at basic rules of statutory construction. And what we're told repeatedly, what we're told over and over again, is that the legislative, the purpose here, the first rule, the primary rule, is to ascertain and give effect to the legislative intent. And in doing so, we look first to the language. And if it's clear and unambiguous, we need not look any farther. And what I'm arguing here, Your Honor, basically is when you look at the two statutes here, they're both telling you the same thing. Both of them are telling you that these outcry statements were inadmissible. If the source of admission here is 115-10, we look at that statute and the very first words are, in a criminal prosecution, which we know this isn't. Because if it were, Your Honor's point about confrontation clause being activated would be present. It's, as the Supreme Court told us repeatedly, it's civil in nature. So does 115-10, which limits itself to, in criminal prosecutions, open the door to it? The answer to that is no, based on the plain language of the statute. We look at the discharge statute. And what does it tell us? 104-25. It tells us, and again, the language I think is very, it's very selective here. It says, the hearsay rule and affidavits may be used for secondary matters. And they list chain of custody, laboratory reports, police reports, things of that nature, authentication of transcripts. They're saying, for those secondary matters, we're going to relax the hearsay rule. So again, just applying that primary rule, that cardinal rule of statutory construction, both these statutes are telling us that the outcry statements here are inadmissible. There's no statutory vehicle to let them in. And frankly, I don't think we need look any further than that primary rule to resolve this case. If we look only at that primary rule, the two statutes are telling us consistently, one result. Don't admit the outcry statements. Now, the state has urged in a number of ways that we start looking, delve a little deeper. We look at secondary rules of statutory construction to try and get to the result they are trying to get to, which is the admission of these statements. And let me suggest, Your Honors, that even if we delve deeper, even if we try and apply these secondary rules of statutory construction, we still don't get an avenue to admit these things. The state, for example, urges that Mr. Arango is trying to rewrite that discharge provision to add the word only. The actual rule of secondary construction that's applicable here is that Latin phrase, expressio unius exclusio alterius. Listing of some things is the exclusion of others. When the legislature in that statute said secondary matters and listed those secondary matters, they don't have to add the word only. That secondary rule of statutory construction tells us that the only is there. When they list those things, they say you may go this far, but no further. This is where we're relaxing the rule. The victim testified in this case, right? The victim did testify in this case. Is there a matter of credibility, then? I think there is, Your Honor. Let me just review some historical facts here. How do you prevail where they have your guy's confession with all the details in it and McKellar's testimony, understanding you have this argument under Sargent, which the Supreme Court has already backed off of a month ago? Well, again, I can't concede that one, Your Honor. I'm not asking you to concede anything. I'm proud of the fact that I've never asked a lawyer to concede a thing because I don't expect him to. And I hate it when people put an opinion and he conceded it oral when I was yelling at him that I was smart. So I don't ask that. But she did testify. So what she says is not hearsay in any way, shape, or form, correct? No, it's not. But let's put it in some context, Your Honor. It was the mom testified to, the grandmother testified to, the girlfriend of your client, right? She testified as well. Is that correct? That is correct as well, Your Honor. So that's not hearsay at all either, right? No. And then they have a confession and that's not hearsay. It's an admission of a party opponent. Is that correct? That is correct as well, Your Honor. What are we missing? What we're missing here is let's look at that actual testimony. So we've been putting too much evidence through the copper? Is that what it is? No, Your Honor. What we're saying is that the confession and that evidence don't match. Carmen, the grandmother, what does she say? She's not in the apartment when anything happens. She comes in, she finds, and she walks in, and she finds them both in a state of undress. She throws Mr. Orango out. Mr. Orango, all she can corroborate at best is indecent exposure. She testified under oath. She never saw him touch her. That's her testimony under oath. So she can't corroborate? Does it corroborate the childhood? Does it corroborate McKellar's testimony? Well, that's exactly what occurred. Well, really? And then grandma came in, or whatever the relationship is between these people. Grandmother. Came in and he was naked and I was naked. Well, again, Your Honor, let's look now at the child's testimony. And here I think it's important that Your Honor put this in considerable context and look at it chronologically. The offenses occur in 2004. The girl is three years old. The state stipulates that in 2007, after Mr. Orango was arrested, they interview the girl and she doesn't recall anything. Right. And then in 2010-2011, when this case finally comes to the discharge hearing, now she has a memory. Right. Now the state made a point in its brief that when you stipulate to something, you don't get to dispute it later on. The state stipulated that in 2007, she had no memory whatsoever. No, they stipulated she said she had no memory. Right. Yeah, they did. And I think that testimony, just on the chronology, the testimony is of questionable value to start with. And then there's the fact that the testimony, Your Honor, doesn't correspond with the confession. The girl says that they're both on the bed, we're in underwear, and he is, I think her word was, humping her. His testimony has them both naked with vastly different details as to what happened. Vastly different. These two statements don't correspond. So when Your Honor is talking about is there corroboration, there isn't corroboration because, and Your Honor alluded to the Supreme Court's decision in Lara, which was cited as additional authority, and I think the key point in Lara, when you look at that case, as they talk about it, they say, we're not walking away from Sargent. We're explaining what we mentioned. Well, actually, DeFore didn't bring it up at all, I thought. And then Justice Thomas said, hey, we didn't even bring this up. We should admit our error in Sargent. Am I mistaken on that? As I have read, Lara, the majority is citing Sargent, and never overrules it. They say, we just don't want Sargent to be misunderstood. We didn't mean in Sargent that the corroboration has to be of every element of every charge. What they said instead was, we need something that corresponds. We need corpus delecta proof which corresponds. And when we look to see whether the child's testimony corresponds with the confession, and that was the word that was chosen, and I think put in quotation marks by the Illinois Supreme Court. If I'm recalling correctly, that would be paragraph 45 of Lara. Well, in Sargent, though, the one victim testifies that it didn't happen, right, in terms of several of the events. We don't have that here, do we? Well, we do, effectively, through the stipulation. She has no memory of anything happening. Three years before she testified, she didn't recall. Okay. And again, if you don't recall in 2007, I think it becomes questionable where this memory comes in 2010. Well, everything's questionable. But that is 100 percent a credibility issue, which the trial court ruled on at page 11 of your brief. Yes. It explained, I absolutely believe her now. I have no problem with it. I've watched her testify. I've watched the cross-examination. She's a credible witness. She has no reason to lie. Assume all that's true. The question's still under Lara and under Sargent. Does it correspond? Does it correspond with the confession? And it doesn't. Well, then who would be lying, the victim or the rapist? Pardon? And who would be lying? So the fact they don't jive completely. Who is more reliable, the child or the rapist? In many of the cases, the rapist is. The rapist, remember, has a lot more details than certainly a three-year-old. But isn't that what trial courts do? Isn't that what jurors do? Well, let's look at that, Your Honor, again, from two different perspectives. Let's look at it. Let's remember here that we're talking about a guy who's unfit, a guy who was suffering from degenerative senility. And this didn't just spring up out of whole cloth in 2007. This is a lifetime condition that he... Does it make it... Are you questioning his ability to confess? Certainly. They can file a motion at that. His trial attorney did file a motion challenging his ability to understand Miranda. We didn't raise an issue on that on appeal. I'm not doing that right now. I'm not trying to reopen that. But when Your Honor says, you know, he's a perfect witness, do we believe him? Do we believe her? He wasn't a witness at all, right? No, he didn't testify. The only thing that came in, all you have is the child. All you have is the child and his statement. But again, the statement itself can't support a conviction. We know that. Sargent says that. Harris says that as well. There needs to be some corroboration. And when we look at the corroboration, Your Honor says, do we believe the child? Do we believe the statement? You can't believe both. If one is true, the other is not. Why can't they pick and choose? Pardon? Isn't that what jurors do all the time? They pick and choose. Pick one, the other isn't true. Well, no. I've done this my whole life. So this is my 32nd year having this discussion with the people. And the defense attorney says, one is actually a liar. One is actually telling the truth. You pick it. And if I can show that the statement is partially lying about something, ah-ha, you can't believe it. No, I think they're actually mixed. And that's what we ask prior suspect to do. You can believe that, you don't believe that, and you're allowed to pick and choose, like picking fruit at a produce market. They don't have to believe everything from either party at all. They don't, in my experience. They don't do that at all. That doesn't detract in any way from the corroboration rule that is essentially confirmed in both Sargent and more recently in Lahr. That if you're dealing with a confession, and remember, all the girl says is he was on top of me, our underwear was on, and he humped me. That does not describe the vast majority of the 30 plus charges here. So those must come, if from anywhere here, since grandma can't confirm any of these, she saw nothing. She came in after the fact. So if there's any corroboration, it's got to come from the girl, and the girl can't corroborate. That statement doesn't corroborate any of the discharge statute. I think it's important to note that the discharge statute keys the length of the treatment program to the most serious offense for which he's convicted, because it can, depending on the classification of the offense, it can be as short as 15 months. It can be as long as five years. To me, what that means is that when you make a not not guilty finding, the court isn't just basically sitting there and saying, I think something happened. I'm convinced beyond a reasonable doubt that something happened. I'm not sure which one of these, but I'm convinced something happened. He's got to make a finding as to each of those counts, as to what happened. And when you apply the corroboration rule, if you're talking about Mr. Marengo's statement, the child doesn't corroborate. It doesn't correspond in the way I would suggest, Your Honor, that Lara requires. I'm not saying, particularly in light of Lara, that you have to have independent corroboration of each element, but I am saying that you have to have some corroboration to distinguish one charge from another. Let's say, for whatever reason, you would agree with your answer. It's a good argument. It's a good brief, good argument. At the end of the day, the state's going to file a sexually dangerous or sexually violent person petition against your client. It would be absurd not to. That's a civil proceeding, correct? I believe so. As I stand here right now, I'm not going to tell Your Honor that I've read that in the last week and I'm thoroughly familiar with it or anything like that. Just looking at how much impact it will have on your client. Well, one thing we know, based on the not not guilty, my client now has to register under SORM. I think that's least of his worries. I think so as well. If I were Mr. Arango, that's oh well. Yeah. What I'm pointing out, Your Honor, is that there are consequences to that not not guilty finding and that's why it's important. It's important here that we apply all the law here, that we apply it across the board, that we be consistent in this. Mr. Hirshhorn, I want to make sure you have five minutes rebuttal. So would you conclude, please? Your Honor, the last point I want to make, the last thought I want to leave you with is when I started out writing up the initial brief in this, I was thinking of this in terms of 115-10 and 104-25 as if the legislature hadn't really thought about the consequences of those two played off against each other. And the more I prepped for this argument, the more I read cases and the statute and everything else, I'm now becoming convinced that this really was a rational choice that the legislature made. Mr. Arango's unfit. If you hold a 115-10 hearing involving sexual misconduct, there's really only two possible witnesses, the victim, child in this case, and Mr. Arango. But Mr. Arango's unfit. He can't really participate in that hearing. And it's quite rational for the legislature to say, well, for purposes of criminal prosecution, when you have a fit defendant there who's able to work with his attorney, we'll allow that kind of hearsay in because the defendant can participate, he can help his attorney out. He's the only guy who has information who might be able to help his attorney out. But we're dealing with an unfit individual here. So their purpose in this is to put less evidence, to make less evidence available in a not guilty as opposed to a criminal trial. I'm saying that I think it's rational here for the legislature to have said it's not fair to ask a judge to make a reliability determination, which is after all what they're ultimately making in a 115-10 hearing, with only one side able to participate. Because the defendant is unfit. That's a rational decision for the legislature to make. And any other reading, frankly, would require the legislation to be rewritten. That is not a prerogative of the courts. That's a prerogative of the legislature. If this is wrong, then the fix lies in the legislature and not in the court. Unless there are any further questions. Thank you very much. Thank you, sir. May it please the Court, Assistant State's Attorney Kulafoye on behalf of the people of the State of Illinois. On a claim never before addressed at the trial court level, 115-10 statements are absolutely admissible at discharge hearings, were properly admitted in this situation, and this court should affirm the defendant's finding of not not guilty. Although discharge hearings are civil in nature, they're innocence-only proceedings, they are a prosecution, although not a criminal prosecution. They employ the same standard of proof as in a criminal trial, proof beyond a reasonable doubt. Discharge hearings are contained within the code of criminal procedure. And the purpose of a discharge hearing is to determine the sufficiency of the evidence. Is there enough evidence? Is there enough proof beyond a reasonable doubt to essentially commit the defendant for the purpose of restoring him to fitness so that he can be criminally prosecuted? Or if there is not enough proof beyond a reasonable doubt, then the defendant is acquitted. Discharge hearings are very analogous to juvenile adjudications of delinquency. Juvenile adjudications of delinquency are civil, just like discharge hearings are. They employ the same standard of proof as in a criminal trial, proof beyond a reasonable doubt. Yet, in juvenile adjudications of delinquency, 11510 statements are routinely admitted and used as substantive evidence. And the same should hold true here for discharge hearings and even more so because the authority lies within the code. Discharge hearings and 11510 statements are both contained within the code of criminal procedure. All criminal rules of evidence apply to discharge hearings and specifically because 11510 is a valid, accepted, hearsay exception. At a criminal trial where the defendant's rights are clearly at play, the defendant's due process rights, Sixth Amendment, Confrontation Clause rights are at play, 11510 statements are admitted as substantive evidence. And People vs. Waste tells us that because a discharge hearing is an innocence-only proceeding, hearsay is admissible, the defendant's rights are not at play at a discharge hearing, and therefore a discharge hearing is essentially a more relaxed type of hearing. And the purpose that it is a more relaxed type of hearing is because the purpose is to get to the bottom line. Do we have enough evidence to keep this defendant so we can potentially restore him to fitness for the purpose of a criminal trial or if there's not enough evidence to then acquit the defendant? Now, counsel discusses a lot about the secondary matters that are addressed in the discharge hearing statute. And these secondary matters specifically deal with evidence such as laboratory reports, court-reported transcripts, chain of custody issues. And I submit that these are all foundational matters. And the reason that the legislature essentially included these secondary matters in the discharge hearing statute was to, again, broaden up the discharge hearing and to allow these foundational matters that normally are not hearsay exceptions and would not be allowed at a criminal trial, but to not bog down the discharge hearing by proving up a laboratory report or proving up the calibration of drug equipment, again, for the purpose of a more relaxed hearing in order to bring in all the relevant evidence for the court to be able to make a determination, is there enough proof beyond a reasonable doubt? What about counsel's argument that because you're dealing with an unfit defendant, if he's unfit for trial, isn't his hearsay statement further plagued by some sort of further unfitness that we should carve out an exception here? I'm sorry, I don't... What hearsay statement are you referring to? Well, he's saying the defendant is unfit for trial. Yes. So to use his hearsay statements during the civil proceeding has a further unreliability attached to it, so it shouldn't be used. I don't believe it does, because again, the whole purpose of corpus selecti is to essentially corroborate the defendant's confession, and if there is not enough corroboration, then obviously there is not enough to corroborate his confession and to also establish the corpus selecti. So I don't believe that... I believe in this case that there was ample evidence that was presented to corroborate the defendant's confession, even though he did not have an opportunity to testify. More importantly... But no one actually witnessed what was discussed. In other words, they saw him unclothed, but no one saw the actual sexual acts. That's true, Your Honor. No one saw the actual sexual assault take place. However, under Laura, Laura tells us that corroborating independent evidence of penetration is not necessary to corroborate the defendant's confession and to establish the corpus selecti. Well, there were 32 counts, though, so you may have had... There may be one incident out of all of this that would have applied... that would have applied to? Well, actually, Carmen's testimony, the grandmother's testimony, corroborates almost every detail of the defendant's confession. Carmen, the grandmother, testified that she arrived back at the home after leaving the defendant alone with the victim, that she found the defendant half-naked from the waist down in the bedroom along with the victim laying face-down on the bed, also naked, and that Carmen then approached the defendant, slapped him, kicked him out of the house, inspected the victim, who was visibly nervous and shaken and upset, and observed red markings and bruises in the victim's thigh area. And then went... She didn't... But didn't tell the authorities until hours and hours later, either late that night or hours later? That is correct. She didn't. She indicated that she didn't know what to do. So she spoke to Melissa about it when Melissa arrived home. And she bathed the child, and then later there's evidence supposedly the child came out of the shower later by herself, naked? Your Honor, there was evidence, there was testimony that was presented that before Carmen left to go to the store that she bathed the victim. Earlier in the day, she bathed the victim, then left the victim with the defendant in the home. So that all happened prior to the assault taking place. And how was it that the state waited three years to bring this action? Well, Your Honor, the state didn't wait. Melissa, who contacted the police after she came home and found Carmen in the kitchen, crying, indicating something obviously had taken place, called the police, took the victim to the hospital. There was a police report, there was an investigation that was immediately started on this case, and there was an investigative alert that was placed on the defendant in 2004. The defendant wasn't arrested or caught for the offense until 2007, when he was arrested for an unrelated matter, and that's when the investigative alert arose. Because it was just by chance through a warrant? Through another arrest, Your Honor. Back to the investigative alert, yes. And no orders of protection or anything else was entered? I am not aware of any orders of protection, Your Honor. There was a so that the child forgot what had happened, had no memory of it. And later, an assistant state's attorney and two police officers talked to this child. What was said, and what was gleaned from that discussion, if she couldn't remember anything? Well, there is a stipulation that was entered that in 2007, when the defendant was arrested, that the victim would testify that at that time she did not recall the incident. Now, at trial, she was able to testify. She did testify to, obviously, what her testimony was, which is not it doesn't give every detail that was provided during the victim's VSI. During the victim's VSI, she was very detailed about everything that the defendant had done to her during the assault. However, I submit that she was a young child. There was many years that had lapsed from the time of this offense to the time that this discharge hearing actually took place. And there are many reasons to attribute to her possible lack of memory. Well, there are reasons. Obviously, there could be reasons for that, but the question is the delay in the time, and then the refreshing of recollection. Normally, when you're discussing something with a potential witness, you ask, is there anything that we could find or give you that would refresh your recollection? So, she went from no recollection to the recollection that she then had. She went from no recollection in 2007, Your Honor, to recollecting some of the events that transpired in 2010 when she testified. She never testified in 2010 that her memory was exhausted in any way during her testimony. Her testimony what it was during the discharge hearing was very clear and concise, and although it did portray herself and the defendant both wearing underwear during the assault, she was able to give certain details regarding the assault, although not every single detail that was provided at the VSI, which I also submit the VSI was done within days from the actual assault versus years later, the discharge hearing testimony. But none of those things came out until years later. So, the question, you have the structure, which the Supreme Court has obviously preserved, is to enable this incursion into the use of hearsay. And so, when you have a situation that becomes as attenuated as this, where you have a lapse of recollection, you have corroboration issues or a lack thereof, and then all of a sudden later through after this process then it awakens itself again into a different testimony. There are different versions and iterations of what occurred here. However, Carmen's testimony alone under Lara is enough to corroborate the defendant's confession. So even if we take out MM, the victim's testimony, there is enough corroboration with Carmen's testimony under Lara. There doesn't need to be an exact match between the corroborating evidence and the defendant's confession. All the corroborating evidence needs to do is to tend to connect the defendant to the crime. But the defendant has been found under three different examinations to be totally under dementia and he doesn't have the cognitive power in order to do certain things. And that's why he's not being tried. He's not fit for trial. Correct. And that's why this is not a criminal trial. It's a discharge hearing. And there is a difference in regards to the amount of evidence that is in the discharge hearing. It's not a criminal trial. His rights are not at play at the discharge hearing. And essentially the legislature enacted these secondary matters again as a way to not only admit a valid hearsay exception such as with 11510, but also secondary matters, foundational matters that normally would not come in at a criminal trial. But the point is that when you get down to it, that it's the credibility of what is ultimately said in that confession that is at play because you have somebody who's not even fit to stand trial. For the discharge hearing purposes, the defendant doesn't have a right to testify. And again, I would submit to this Court that there are clearly the defendant's confession must be corroborated in order for the corpus delecti to be established even at a discharge hearing. And I submit that that is the case here. Carmen's testimony alone is enough to establish the corpus delecti. Under Laura, no direct evidence of penetration is necessary. Laura tells us that, and Laura even discusses Bounds, Perfecto, and Stevens, all prior Illinois Supreme Court decisions. All those convictions were upheld and in all three of those cases as well, the victim, some of the victims, didn't even recall any of the sexual assault that took place. And yet those courts, in addition to Laura, because that's the situation we have, the victim never testified to actual penetration, the victim testified the defendant's hand touched her vagina, and yet, very importantly, the Laura court held that despite the fact that the victim never testified to any direct penetration, her version of the events and the defendant's version of the events were almost identical. And that is very important here because, as Laura tells us, as Bounds, Perfecto, Stevens have previously held, direct evidence of penetration is not necessary. And based on those rulings and based on the evidence that we have, we not only have Carmen who testified very credibly, the trial court found her to be a credible witness and essentially a night witness to the case, and we also have the testimony of Melissa who corroborates Carmen's testimony and corroborates part of the defendant's confession as well. Was there a report of the physician that examined the child when she was first brought into the hospital? There was nothing on the record that was presented regarding that, Your Honor. So there was no independent medical determination of what had happened to this child from these alleged attacks? Nothing that was presented at the discharge hearing, no evidence of that. No medical evidence was presented at the discharge hearing. But I would also submit to Your Honors that to read this narrow and limiting interpretation as counsel would like this court to adopt regarding discharge hearings and regarding the admissibility of 11510 would lead to an illogical and absurd result. It would be contrary to legislative intent of the 11510 statute, which was enacted to give a voice to young sexual assault victims and it was a way to bring in corroborative testimony that the victim had spoken to someone about the assault. And it would clearly not make sense, it would be illogical to allow 11510 statements as substantive evidence at a criminal trial where the defendant's due process rights, all his rights, are clearly at play, but not to allow them at a discharge hearing, which is a more relaxed type of hearing where all sorts of hearsay and especially a valid hearsay exception such as 11510 would come in. And more importantly, it wouldn't give the court the full picture. It wouldn't give the court all the relevant evidence necessary in order to make a proper determination. Is there enough evidence? Is there proof beyond a reasonable doubt to keep this defendant or to acquit him? And as I indicated regarding the second issue under Lara, the corpus selecti was established, the defendant's confession was corroborated, and it was done so simply with Carmen's testimony. We don't even need the victim's testimony. Carmen's testimony alone is enough. And People v. Sargent is dissimilar to the instant case. It's dissimilar because there the victim testified that the defendant had done absolutely nothing wrong to the victim, to MG, and the only evidence was one act of penetration, finger to anus penetration, that was presented through a DCFS caseworker, in addition to the defendant's confession in which he was approximately penetrating MG's anus with his finger. Here, we have much more corroboration than Sargent. That's why Sargent is different. As I indicated earlier, Carmen's testimony in addition to Melissa's testimony, in addition to the victim's testimony in this case. And more importantly, the Lara court, although it did not outright overturn Sargent, it did indicate that Sargent did hold that not every single element of an offense needs to be corroborated in order to establish the corpus delecti. And Lara also held that that undermined the defendant's theory and argument in Lara. And the same should hold true here. Would you please conclude? Yes, thank you. The people submit that this court should, when determining the sufficiency of the evidence, also consider the 115 testimony which was properly admitted and even though taking out the 11510 evidence, the 11510 testimony, there was ample evidence to find the defendant not guilty beyond a reasonable doubt. We ask that you affirm the trial court's finding. Thank you. Mr. Hirshhorn, five minutes. Just a few points very briefly. One thing I just wanted to clarify for Justice Harris here, your Honor was asking a question about the hearsay nature and it sounded like you believe that I was talking about the hearsay nature of defendant's statements. What I was talking about there was the hearsay, not the hearsay nature of defendant's statement, but the hearsay nature of the outcry statement. And I wanted to make sure that that was clear to your Honor. And that's why his lack of clarity is important here where you're talking about a situation where the only two possible witnesses are the defendant and the victim. The victim's outcry statement, if the defendant's unfit, he's in no position and his attorney is in no position. So you're stressing your defendant just should have greater rights. No, your Honor, I'm not saying greater rights. What I'm saying is if the legislature wanted to open this door, if they wanted to allow one... You're saying, but for the fact that he's unfit, that we're not going to allow the outcry statements. You're giving him a greater right. I don't think we're giving him any greater right. I think we're acting consistent with the vehicle that was created by the legislature. Well, the purpose of 10425 is to determine whether or not the defendant should have his charges remaining pending, jurors in competency, or let him go, right? So if he didn't... So a lot of them are found innocent, right? You don't know that, they're not even close, move on. It's his purpose really to say he's not not guilty. That's why it's called the not not guilty hearing. So they're giving this opportunity, and as Justice Harris points out, so that's what the purpose of this is, to determine whether or not, not that he did it, but that he didn't do it. And here, what evidence was presented that he didn't do it? What evidence is missing? Your argument is, in your brief and now, is that evidence should be more restricted at a discharge hearing than at a criminal trial. 11510, at a criminal trial, allows this in. You say it shouldn't be allowed in, under the theory, meaning he does have less, he does have more rights, he is more protected, because of his incompetency, than he would have been, had he been sitting at trial. Kind of yes and no, Your Honor. I know that's not the answer you want to hear. What's no? The no part is that because this is a creature of legislation, the legislature got to say what's admissible and what's not, and they clearly didn't indicate that it was admissible here, because they say we're limiting the hearsay exception to secondary matters. What do they say limit? They said and you can have hearsay and then they say lab reports, etc. Foundational things. That doesn't say, and only those, that doesn't say we're limiting it to that, because we don't have, in criminal law, we don't allow foundational things in, lab reports in. That's what Crawford's for. Crawford says you can't let your reports in. But Crawford doesn't apply since the Sixth Amendment doesn't apply. In terms of corroboration, what corroboration, physical corroboration, would one, you expect, in this case, based on your client's confession? If you're the doctor looking at the three-year-old, what would you expect to find? There are a variety of allegations. There are over 30 counts. We have digital, we have penis to vagina, we have a long laundry list of It's not in my client's interest to detail it. But he did detail it, and it's his detail, it's not a copy story. What I'm saying is Sargent tells us that, because in Sargent there were five separate counts that came up on appeal, and they said we need something to show that each one individually occurred. We're not asking, particularly for Lara. So in this case, reading, this is page 11 from the brief about your client's confession, the defendant stated that the three-year-old, M.M., climbed on top of his vagina on top of his penis and moved her body back and forth while her vagina rubbed against his penis. Now there would be no evidence of that. If you're the doctor looking at the three-year-old, there would be nothing. According to the defendant, M.M. took his hand and placed it on her vagina and her breasts and had him rub them with his hands. There would be no evidence of that. Are you talking about medical evidence? No physical evidence. Continuing, the defendant stated that his fingers went inside M.M.'s vagina and his mouth touched her vagina and buttock, correct? What physical evidence? There might be, depending on the nature and the degree of penetration. It's how far he's digitally penetrated. According to the defendant, M.M. put his mouth onto his penis and sucked his penis. Without any evidence of ejaculation, as a doctor, and again, I understand you're not a doctor, what would you expect to find? I don't know that the doctor would find anything to corroborate that. So there would be no physical evidence? So the lack of physical evidence would actually corroborate what he said, would it not? Had there been a torn anus, had there been a beating above her body, which he didn't say, that would contradict what the little girl had to say. No, but if the little girl said that these things happened, if she took the stand and testified to them, then we have it. That would be sufficient in your argument. But then if it's a criminal matter, it would go in, would it not? Your whole argument is that in a criminal trial, VSI information which is gleaned within hours of the attack, a couple of days of the attack, that would all come in, but it shouldn't come in on a discharge hearing. No, it shouldn't, unless the legislature allows it. And let me point out, the two final points I want to make here is counsel spent a little while talking about how this is analogous to the Juvenile Court Act. And the Juvenile Court Act, again, it's not a conviction, it's an adjudication of delinquency and it's civil in nature. But if you look at the Juvenile Court Act, there's a specific provision in the Juvenile Court Act that allows the introduction of this kind of evidence. I would cite, Your Honor, 705 ILCS 405-2-18, quote, previous statements made by the minor relating to any allegations of abuse or neglect shall be admissible. The legislature took the time there to say it's going to be admissible here. They didn't do that here. And there's a reason for that. And the reason here is that the client's unfit. He doesn't have the ability. Let's go to that. I know we're going over your time, but I like that. What is it your client was deprived of being able to tell his attorney? All right, so he confesses. What does he say? He's sitting next to his counsel attorney, not guilty hearing. He's going to give him some trial strategy. What theoretically, and I mean just theoretically, what could the guy have said had he not been accountable? Oh, Your Honor, this is an answer that could go on for weeks. Oh, I mean, he could describe the room in a way that would make what she said happen impossible. Impossible? She says she was on a bed. There was no bed in that room. But somebody else would have to testify to that. But he'd be able to help his attorney out to look for this kind of information, to glean where it is and what evidence he would have to produce to show that the kid was lying, that this didn't happen. These are things that a fit defendant can do that an unfit defendant can't do. And that's a hair that the legislature is allowed to split. The last thing I want to talk about here is the state keeps talking about Carmen alone corroborates things. Carmen said under oath she didn't see any contact whatsoever between the two. She corroborates nothing. All she corroborates is that she lived with Mr. Arango, which is certainly not criminal. The naked boyfriend, the naked defendant is with the naked 3-year-old. That's all she can corroborate. If the charge here was indecent exposure we wouldn't have an argument. But the state chose 32 separate counts. And those aren't here. Unless there are any further questions thank you, Your Honor, very much. Thank you. Thank you. Thank you, counsels, for a very interesting oral argument. The matter is being taken under advisement. We are adjourned.